# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### EASTERN DIVISION

**KEVIN CARNETT,**

                                        **Plaintiff,**

**v.**                                                         **Case 1:20-cv-01238-SHM-cgc**

**BLAIR WEAVER, SETH PRESLAR,**
**CODY CLOUD, JASON WALKER,**
**KYLE CONNER, KYLE CUPPLES,**
**MARK GRIFFIN, and MICHAEL**
**PHELPS, in their individual capacities,**

                                        **Defendants.**

---

## REPORT AND RECOMMENDATION ON
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

Before the Court are Defendants Blair Weaver ("Sheriff Weaver"), Seth Preslar ("Investigator Preslar"), Cody Cloud ("Deputy Cloud"), Jason Walker ("Deputy Walker"), Kyle Conner ("Deputy Conner"), Kyle Couples ("Deputy Couples")[1], Mark Griffin ("Chief Deputy Griffin"), and Michael Phelps ("Deputy Phelps") (collectively "Defendants") Motion for Summary Judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure.  (Docket Entry ("D.E." #72).  Pursuant to Administrative Order 2013-05, the instant motion has been referred to the United States Magistrate Judge for Report and Recommendation.  For the reasons set forth herein, it is recommended that Defendants' Motion for Summary Judgment be

---

[1]  The parties do not dispute that Defendant "Couples'" name is spelled incorrectly in the docket and throughout the record.  Defendants state that the correct spelling of his name is "Kyle Cupples."  (*See* D.E. #81-1 at PageID 684-85, ¶ 81; D.E. #84-1 at n.1).

GRANTED.

## I.    Introduction

This case arises from the actions taken by members of the Chester County Sheriff's Department during and after the arrest of an individual named Colton Carnett.   On October 20, 2020, Plaintiff filed his Complaint asserting claims pursuant to 42 United States Code Section 1983 for violations of the Fourth, Fifth, Eighth, and Fourteenth Amendments as well as state law claims.   (D.E. #1).   However, following this Court's ruling on several Motions to Dismiss, the only claims remaining in this action are the Fourth Amendment claims brought against Defendants in their individual capacities.   (*See* D.E. #44 at PageID 329).

On January 20, 2023, Defendants filed the instant Motion for Summary Judgment. Therein, they argue as follows:

- All claims against Defendants Couples and Phelps should be dismissed for lack of personal involvement in the execution of the arrest warrant and subsequent search.

- Defendants Preslar, Griffin, Walker, Cloud, and Watkins[2] did not violate Plaintiff's Fourth Amendment rights when executing the arrest warrant because the warrant was valid, they had a reasonable believe Colton Carnett resided at the property, and they have a reasonable believe that Colton Carnett was at the property prior to executing the arrest warrant.

- Defendants did not violate Plaintiff's Fourth Amendment rights by cutting a small hole in the ceiling to search for Colton Carnett because Plaintiff does not own or lease the property and cutting the hole was reasonable under the circumstances presented to them.

- Defendant Cloud did not violate Plaintiff's Fourth Amendment rights by seizing any alleged personal property because he remained outside during the search, and the remaining Defendants did not violate Plaintiff's Fourth Amendment rights by seizing Plaintiff's alleged personal property because they reasonably believed it to be either stolen during the two burglaries at issue or to be evidence of Colton Carnett's criminal activity.

---

[2]  Defendants' Memorandum in Support of their Motion for Summary Judgment does not list Deputy Watkins as an arresting deputy; however, as set forth, *infra*, the record reflects that he also took part in the arrest of Colton Carnett.

- Defendants did not violate Plaintiff's Fourth Amendment rights by retaining any seized property.

- If any of Plaintiff's Fourth Amendment rights were violated, Defendants are entitled to qualified immunity.

- Plaintiff is barred from asserting any Fourth Amendment claims pursuant to *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).

- It is undisputed that Defendants did not use excessive force against Plaintiff.

(Def.'s Memo. in Support of Mot. for Summ. J., filed at D.E. #72-2).   In support of Defendants' Motion for Summary Judgment, they have filed their Statement of Undisputed Material Facts (D.E. #72-1), their Memorandum (D.E. #72-2), and their evidence (D.E. #72-3, #72-4, #72-5, #72-6, #72-7, #72-8, #72-9, #72-10, #72-11, #72-12, #72-13, #72-14).

On February 13, 2023, Plaintiff filed his Response, which he titles "Reply in Opposition to Defendants['] Motion for Summary Judgment, Objections, and Genuine Disputes" ("Response"). (D.E. #81).   He has separately filed his responses to Defendant's Statement of Undisputed Material Fact (*see* D.E. #81-1 at PageID 679-684) as well as Additional Statements of Undisputed Material Fact (*see id*. at PageID 684-693).[3]   Plaintiff has also filed numerous exhibits of his own, including three USB drives.   (*see* D.E. #81-2, #81-3, #83, #87, #89).

On February 28, 2023, Defendants filed their Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment.   (D.E. #84).   Therein, Defendants argue that Plaintiff's evidence

---

[3] Plaintiff's Response disputes Defendant's evidence and presents his own evidence in a manner that appears to attempt to supplement his responses to Defendant's Statement of Undisputed Material Fact and his own Additional Statements of Undisputed Material Fact; however, this is not done in a format that is permitted by Local Rules 56.1(a) and 56.1(b), which does not allow Defendants a reasonable opportunity to respond thereto.   Accordingly, the purported disputes raised in the Response that were not raised in Plaintiff's responses to Defendant's Statement of Undisputed Material Fact or Plaintiff's Additional Statements of Undisputed Material Fact have not been considered for the purposes of this Motion.

is immaterial for purposes of the instant motion.

## II.    Proposed Findings of Fact

On October 20, 2019, Deputy Michael Phelps with the Chester County Sheriff's Office began an investigation concerning and break-in and possible theft to a residence located at 195 Autry Lane in Chester County, Tennessee.   (Dec. of Michael Phelps, filed at D.E. #72-10, ¶¶ 3-4).   Deputy Phelps discovered that the front door of the residence was forced open and damaged. (*Id*. ¶ 4).   An eyewitness to the break-in provided a detailed description of the suspect and his vehicle.   (Dec. of Phelps ¶ 4).[4]   The vehicle was identified as one driven by Colton Carnett. (Dec. of Preslar ¶ 5).   Additionally, during a photo lineup, the witness of the Autry Lane break-in identified the suspect as Colton Carnett.   (Dep. of Preslar 55:20-23; Dec. of Preslar ¶ 6).

On October 21, 2019, Investigator Seth Preslar discovered that Colton Carnett had an active arrest warrant.   (Dec. of Preslar ¶ 7 & Exh. B; Dep. of Seth Preslar at 14:13-16).[5]   The arrest warrant listed Colton Carnett's address as 3590 Garland Road in Chester County, Tennessee ("the Property").[6]   (*Id*.)   Investigator Preslar utilized state and local law enforcement databases to

---

[4]  Plaintiff objects to this evidence as hearsay; however, it is RECOMMENDED that the witness's statement is being offered not for the truth of the matter asserted but to explain why Investigator Preslar had a reasonable belief that Colton Carnett was driving the vehicle as recently as the day before the arrest warrant for him was executed.   *See* Fed. R. Evid. 801(c)(2).

[5]  Plaintiff states that he disputes that Investigator Preslar was aware of an active arrest warrant for Colton Carnett by relying upon Investigator Preslar's statement in his deposition that he did not recognize the one-page arrest warrant that Plaintiff provided to him at the deposition.   (*See* Pl.'s Exh. USB(B) at Carnett(250), at 66-68 & Exh. 23).   In his declaration, Investigator Preslar has provided a two-page arrest warrant, with the second page being identical to the one-page arrest warrant relied upon by Plaintiff with the exception of differing handwritten notations and stamps on the two copies. (Dec. of Preslar at Exh. B). Investigator Preslar acknowledges that the exhibit to his declaration is the warrant he relied upon.   (Dec. of Preslar ¶ 7).

[6]   The Property is titled in the name of Larry Carnett, Plaintiff Kevin Carnett's father.   (Dep. of Carnett at 38:24-39:3; Pl.'s Resp. to Def.'s Req. for Adm., filed at D.E. #72-13, at No. 1-2).   Plaintiff does not

confirm Colton's residence.   (Dec. of Preslar ¶8).   Preslar and Chief Deputy Mark Griffin ("Griffin") traveled to the Property to serve the arrest warrant. (Dec. of Preslar ¶ 9; Dec. of Mark Griffin, filed at D.E. #72-9, at ¶ 3).

Upon their arrival, Investigator Preslar observed the vehicle that he knew Colton Carnett drove.   (Dec. of Preslar ¶ 5).[7]   When Investigator Preslar approached the front door, the door closed, and he heard movement inside the residence.   (Dep. of Preslar at 14:14-16, 61:10-15). Shortly thereafter, Deputy Cloud, Deputy Walker, and Deputy Watkins arrived to assist,[8] and they proceeded to knock on a door to the Property announce their presence.   (Dec. of Preslar ¶ 11; Dec. of Griffin ¶¶ 5-6; Dec. of Cody Cloud, filed at D.E. #72-5, at ¶ 5; Dep. of Preslar at 15:18-20).

As the deputies entered the residence, they observed in plain view numerous "marijuana roaches" as well as prescription bottles that were prescribed to "Denise Whitaker" and "Denise

---

have a leasehold interest in the Property.   (Dep. of Carnett at 39:13-17: Pl.'s Resp. to Def.'s Req. for Adm. at No. 3).

[7] There is conflicting evidence as to whether an individual named Alycia Nunley ("Nunley") told Investigator Preslar that Colton Carnett was presently inside the Property when he arrived there.   (Dep. of Preslar at 61:10-15; Dec. of Preslar ¶ 11; Pl.'s Exh. USB(B) at "ALYCIA NUNLEY TEXT 1.pdf," "ALYCIA NUNLEY TEXT 2.pdf," "ALYCIA NUNLEY TEXT 3.pdf," "ALYCIA NUNLEY TEXT 4 . pdf," "ALYCIA NUNLEY TEXT 5.pdf," "ALYCIA NUNLEY TEXT 6.pdf," and "ALYCIA NUNLEY TEXT 7.pdf.").   While the purported text messages have not been authenticated, when there has been no objection that the material cited cannot be presented in a form that would be admissible in evidence, the Sixth Circuit no longer requires that evidence be authenticated to be considered for purposes of summary judgment.   *See Magnum v. Repp*, 674 Fed. Appx. 531, 536-37 (6th Cir. 2007).   No such objection has been made here.   However, as discussed, *infra*, it is RECOMMENDED that Investigator Preslar and the other deputies who executed the arrest warrant had sufficient evidence to form a reasonable belief that Colton Carnett was presently inside the Property to execute the arrest warrant in a manner that comports with the Fourth Amendment.   Thus, it is RECOMMENDED that the dispute over whether or not Nunley also advised Investigator Preslar that Colton Carnett was presently inside the Property is not material for purposes of summary judgment.

[8] Sheriff Weaver and Deputy Connor were not present during Colton Carnett's arrest.   (Dec. of Blair Weaver, filed at D.E. #72-3, at ¶ 3; Dec. of Kyle Connor, filed at D.E. #72-7, at ¶ 3).

Jackson" with an address in McNairy County, Tennessee that were near a black metal lock box. (Dep. of Preslar at 26:8-18, Dec. of Preslar ¶¶ 11-12; Dec. of Cloud ¶ 5; Dec. of Griffin ¶ 6; Dec. of Walker ¶ 4). The officers also observed a black container with a label from Shackleford Funeral Home, which contained cremated remains. (Dep. of Preslar at 26:12-18; Dec. of Preslar ¶ 12). Investigator Preslar stated that the residence was a "mess," and Plaintiff later stated that he was renovating the house. (Dep. of Preslar at 25:16-20; Dep. of Carnett at 41:4-42:24).

Investigator Preslar then contacted the McNairy County Sheriff's Office and was advised that Denise Whitaker/Jackson was the victim of the aggravated burglary reported on October 20, 2019. (Dec. of Preslar ¶ 13). Investigator Preslar was informed that the suspect stole prescribed medications, the cremated remains of her father, jewelry, foreign and domestic currency, a black lock box containing personal information, and other personal property. (*Id*.)

After the initial search of the Property, Colton Carnett was not found. (Dec. of Preslar ¶ 14). Deputy Cloud determined that Colton Carnett was likely in the attic because of a footprint he observed on top of a computer tower under the attic access door. (Dec. of Cloud ¶ 5). Deputies announced their presence again and instructed the suspect to come out of the attic. (Dec. of Cloud ¶ 7). For officer safety and in an attempt to obtain a view of the attic, Deputy Cloud picked up a nearby metal bar and attempted to lift the attic access panel; however, the panel would not open, and Deputy Cloud could feel pressure against the door that felt to him "as if someone was actively applying pressure to the door." (*Id*.) Therefore, Deputy Cloud used a nearby metal bar to create a small hole, about the size of a tennis ball, in the sheetrock of the ceiling to obtain a view of the attic. (Dec. of Cloud ¶¶ 7; Dec. of Preslar ¶ 14). Colton Carnett was located inside the attic, at which time he was arrested and transported by Deputy Walker to the Chester County Criminal

Justice Complex.   (Dec. of Preslar ¶ 14; Dec. of Walker ¶ 5; Dec. of Cloud ¶ 8; Dec. of Griffin ¶ 6).[9]

Investigator Preslar determined that a search warrant was necessary based upon the stolen property and narcotics in plain view.   (Dec. of Preslar ¶ 17).   While Investigator Preslar prepared and obtained the search warrant, Deputies Watkins and Cloud remained on the Property to secure it.   (Dec. of Preslar ¶ 17 & Exh. E; Dec. of Cloud ¶ 10).   To assist them, Deputy Connor came to the Property and Deputy Watkins returned to it. (Dec. of Walker ¶ 7; Dec. of Connor ¶ 4).   No further search of the Property or seizure of any items was conducted until Investigator Preslar retuned with the search warrant.   (Dep. of Preslar at 65:23-66:5; Dec. of Cloud ¶ 9; Dec. of Walker ¶ 6; Dec. of Connor ¶ 4, Dec. of Griffin ¶ 7).

Investigator Preslar presented the search warrant application and affidavit to Judge Larry McKenzie, which stated that there was probable cause to believe that Colton Carnett had committed the crimes of theft of property, possession of marijuana, possession of a legend drug without a prescription, and aggravated burglary.   (Dec. of Preslar ¶ 18 & Exh. E).   Judge McKenzie granted the search warrant and directed that any evidence including stolen property, prescription medications, foreign and domestic currency, cremated human remains, marijuana, and any other evidence pertaining to the crimes, be seized.   (Dec. of Preslar ¶ 18 & Exh. E).

While these events were ongoing, Plaintiff was at his shop in Jackson, Tennessee.   (Dep. of Carnett at 90:2-93:25).   Plaintiff overheard officers over a police scanner talking about activity on Garland Road. (*Id*.)   Plaintiff's neighbor also called and notified Plaintiff that deputies were

---

[9] Sheriff Weaver and Deputy Connor were not present during Colton Carnett's arrest.   (Dec. of Blair Weaver, filed at D.E. #72-3, at ¶ 3; Dec. of Kyle Connor, filed at D.E. #72-7, at ¶ 3).

on the Property, which property Plaintiff to drive there.   (Dep. of Carnett at 91:23-92:6, 92:22-23).   Upon his arrival, Plaintiff was informed by Deputy Cloud that he was not allowed inside the Property and that a search warrant had been obtained and was "on the way."   (Dep. of Carnett at 94:14-95:7; Dec. of Cloud ¶ 10).

Plaintiff then returned to his truck that was parked in front of the house until Preslar returned with the search warrant about twenty minutes later.   (Dep. of Carnett at 95:14-22; 96:8-10, 102:19-24; Dec. of Preslar ¶ 19).   Upon his arrival, Preslar showed Plaintiff a copy of the search warrant and instructed Plaintiff that he was not permitted to be on the Property during the search.   (Dep. of Carnett at 103:17-104:19; Dep. of Preslar at 54:6-11; Dec. of Preslar ¶ 19). Shortly thereafter, Plaintiff testified that Chief Deputy Griffin and Sheriff Weaver arrived, but Plaintiff had no interaction with Weaver.   (Dep. of Carnett at 107:17-110:2; Dec. of Griffin ¶ 8; Dec. of Weaver ¶ 4).   Griffin informed Plaintiff that he would get a copy of the search warrant after the search. (Dep. of Carnett at 107:17-110:2).

Following Investigator Preslar's instructions, Plaintiff moved his truck off the Property and onto the property of his neighbor, Hugh Kilpatrick, who joined Plaintiff in his truck and remained with him for the remainder of the search. (Dep. of Carnett at 103:17-105:2).   Investigator Preslar, Deputy Walker, and Deputy Connor performed the search, and Chief Deputy Griffin and Sheriff Weaver also went inside the house during the search.   (Dec. of Preslar ¶ 20; Dec. of Walker ¶ 8; Dec. of Connor ¶ 5; Dep. of Carnett ¶ 109:22-110:14).   Deputy Cloud stayed outside the house next to Weaver's vehicle during the search.   (Dep. of Carnett at 110:8-10; Dec. of Cloud ¶ 11). During the search, deputies collected the contraband, stolen property, and other items believed to be potential evidence of Colton Carnett's criminal activity.  (Dec. of Preslar ¶ 20 & Exh. D; Dec.

of Griffin ¶ 8; Dec. of Connor ¶ 5; Dec. of Walker ¶ 8, Dec. of Weaver, ¶ 4).

While seated in the truck, Plaintiff testified that he could only see into the back bedroom of the house through the windows on the side of the house and could not see into any other rooms. (Dep. of Carnett at 110:17-20, 111:13-15, 111:19-116:8).   Plaintiff testified that he could not see any of the officers in the room from his vantage point.  (Dep. of Carnett, D.E. #72-11, 116:2-3). Within approximately an hour of Preslar arriving with the search warrant, Investigator Preslar had exited the Property with a total of four black garbage bags. (Dep. of Carnett at 110:19-24; 111:12-14, 116:22-24).   Plaintiff could not see what was in the trash bags.   (Dep. of Carnett at 110:23-111:4).

There is no evidence that any deputies damaged the Property and/or any items therein with the exception of the small hole created to locate Colton Carnett in the attic. (Dec. of Preslar ¶ 21; Dec. of Cloud ¶ 12; Dec. of Connor ¶ 6; Dec. of Griffin ¶ 9; Dec. of Walker ¶ 9; Dec. of Weaver ¶ 6).   After the completion of the search warrant, Plaintiff received a copy of the search warrant, and all deputies left the Property. (Dep. of Carnett at 109:11-13, 117:3-5).   No physical force was used against Plaintiff at any point.  (Dep. of Carnett at 87:17-88:1; Dec. of Preslar ¶ 22; Dec. of Cloud ¶ 13; Dec. of Griffin ¶ 10; Dec. of Walker ¶ 10; Dec. of Weaver ¶ 7; Dec. of Connor ¶ 7). Defendants Michael Phelps and Kyle Couples were not present at the Property at any point on October 21, 2019.   (Dec. of Michael Phelps, filed at D.E. #72-10, at ¶ 6; Dec. of Griffin ¶¶ 11-13, Dec. of Kyle Couples, filed at D.E. #72-8, at ¶ 3).

### III.    Proposed Analysis & Conclusions of Law

#### a.   Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to a judgment as a matter of law."   Fed. R.

Civ. P. 56(c).   Although hearsay evidence may not be considered on a motion for summary

judgment, *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th Cir.

1999), evidentiary materials presented to avoid summary judgment otherwise need not be in a form

that would be admissible at trial.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Thaddeus-

X v. Blatter*, 175 F.3d 378, 400 (6th Cir. 1999). The evidence and justifiable inferences based on

facts must be viewed in a light most favorable to the nonmoving party.   *Matsushita Elec. Indus.

Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wade v. Knoxville Utilities Bd.*, 259 F.3d

452, 460 (6th Cir. 2001).

Summary judgment is proper "against a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial."   *Celotex*, 477 U.S. at 322.   The moving party can prove the

absence of a genuine issue of material fact by showing that there is a lack of evidence to support

the nonmoving party's case.   *Id.* at 325.   This may be accomplished by submitting affirmative

evidence negating an essential element of the nonmoving party's claim, or by attacking the

nonmoving party's evidence to show why it does not support a judgment for the nonmoving party.

10a Charles A. Wright et al., *Federal Practice and Procedure* § 2727 (2d ed. 1998).

Once a properly supported motion for summary judgment has been made, the "adverse

party may not rest upon the mere allegations or denials of [its] pleading, but . . . must set forth

specific facts showing that there is a genuine issue for trial."   Fed. R. Civ. P. 56(e).   A genuine

issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the

nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To avoid

summary judgment, the nonmoving party "must do more than simply show that there is some

metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 586 (1986).

### b. *Plaintiff's Section 1983 Claims under the Fourth Amendment*

Plaintiff has raised several challenges pursuant to Section 1983 for violations of his Fourth

Amendment rights.[10] Section 1983 states that "[e]very person who . . . subjects, or causes to be

subjected, any citizen of the United States or other person within the jurisdiction thereof to the

deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be

liable to the party injured in an action at law." 42 U.S.C. § 1983. The Fourth Amendment

provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects,

against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but

upon probable cause, supported by Oath or affirmation, and particularly describing the place to be

searched, and the person or things to be seized." U.S. Const. amend. IV.

Defendants have asserted qualified immunity, which shields government official from civil

liability unless, in the course of performing their discretionary functions, they violate the plaintiff's

clearly established constitutional rights. *Aldini v. Johnson*, 609 F.3d 858, 863 (6th Cir. 2010).

To determine whether qualified immunity is warranted, a court must determine whether the alleged

facts show that the official's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S.

194, 202 (2001). If the Court finds that the plaintiff's constitutional rights were violated, it must

---

[10] Defendants have not explicitly challenged whether Plaintiff has standing to pursue these claims, but they note that it is "circumspect" that Plaintiff has any Fourth Amendment expectation of privacy in the property. *See* Def.'s Memo. in Support of Mot. for Summ. J. at PageID 458, n.6 (citing cases).

continue to determine whether the constitutional right was clearly established in the specific context so that a reasonable official would understand that he is violating that right.   *Id*.

### i.   Claims against Deputy Phelps and Deputy Couples

Turning to Plaintiff's claims, as a threshold issue, it is undisputed that Deputy Phelps and Deputy Couples were never present at the Property.   Accordingly, it is RECOMMENDED that Plaintiff's Section 1983 claims against Deputy Phelps and Deputy Couples fail as a matter of law.

### ii.   Arrest of Colton Carnett

As to the remaining defendants, Plaintiff first alleges that his Fourth Amendment rights were violated when officers entered the Property to execute the arrest warrant for Colton Carnett. In *Payton v. New York*, 445 U.S. 537 (1980), the Supreme Court held that a valid arrest warrant carries with it the authority to enter the residence of the person named in the warrant in order to execute it so long as the police have a reasonable belief that the suspect resides at the place to be entered and that he is currently present in the dwelling.   *Shreve v. Jessamine Cty. Fiscal Court*, 453 F.3d 681, 689 (6th Cir. 2006) (citations omitted); *see also El Bey v. Roop*, 530 F.3d 407, 416 (6th Cir. 2008).   When sufficient evidence exists to meet both prongs of the test in *Payton*, summary judgment is proper.   *El Bey*, 530 F.3d at 415-419.

Here, it is undisputed that Sheriff Weaver and Deputy Connor were not present for the arrest of Colton Carnett.   Thus, it is RECOMMENDED that Plaintiff's Section 1983 claims against Sheriff Weaver and Deputy Connor for violating his Fourth Amendment rights during the execution of the arrest warrant fail as a matter of law.

As to Plaintiff's claims against Investigator Preslar, Deputy Cloud, Deputy Walker, Deputy Watkins, and Deputy Griffin for violating his Fourth Amendment rights during the execution of

the arrest warrant, the following facts are undisputed: (1) that the arrest warrant listed the Property as Colton Carnett's; (2) that Investigator Preslar confirmed that the same address was listed for him in state and local databases; (3) that Investigator Preslar heard movement inside the Property; (4) that the vehicle Investigator Preslar knew Colton Carnett drove was parked at the Property; (5) that the vehicle matched the description provided by the witness of the Autry Lane break-in from the previous day; and, (6) that the same witness positively identified Colton Carnett as being the suspect in the break-in in a photo line-up.

As the Property was listed on the arrest warrant for Colton Carnett as his residence and as this was corroborated in state and local databases, it is RECOMMENDED that the arresting deputies had a reasonable belief that Colton Carnett resided there. Further, an individual's presence at the location "may be suggested by the presence of an automobile," as it was here. *El Bey*, 530 F.3d at 417 (quoting *Valdez v. McPheters*, 172 F.3d 1220, 1226 (10th Cir. 1999)). When combined with Investigator Preslar's observation of movement inside the Property, it is RECOMMENDED that the arresting deputies had a reasonable belief that Colton Carnett was presently inside.

Accordingly, it is RECOMMENDED that the execution of the arrest warrant for Colton Carnett inside the Property did not violate the Fourth Amendment and that Investigator Preslar, Deputy Cloud, Deputy Walter, Deputy Watkins, and Deputy Griffin are entitled to qualified immunity on Plaintiff's Section 1983 claim based upon the alleged unlawfulness of Colton Carnett's arrest.

### iii.  *Damage to the Property*

Next, Plaintiff claims that his Fourth Amendment rights were violated by the damage done

to the Property during the execution of the arrest warrant.  It is undisputed that Deputy Cloud made a small, tennis-ball-sized hole in the ceiling because they believed an individual was holding the attic door closed.  It is also undisputed that Deputy Cloud made the hole after viewing a footprint beneath the attic door and, when attempting to push the attic door open, he felt as if someone was pressing it closed.   Thus, Deputy Cloud believed that an individual was barricading himself inside an attic space above the arresting deputies, which, along with impeding the arrest, created a safety concern.

The Supreme Court has acknowledged that "officers executing . . . warrants on occasion must damage property in order to perform their duty."  *Dalia v. United States*, 441 U.S. 238, 258 (1979 (citations omitted).   "Excessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment, even though the entry is lawful."  *United States v. Ramirez*, 523 U.S. 65, 71 (1998).   The reasonableness of the damage must be evaluated with reference to the target of the search, *Edward M. Chumley v. Miami Cty., Ohio*, No. 3:14-cv-16, 2015 WL 859570, *10 (S.D. Ohio Feb. 27, 2015), and *de minimis* damage is not compensable, *Streater v. Cox*, 336 F. App'x 470, 477 (6th Cir. 2009).

Here, there is no dispute of fact as to the nature of the damage, which can only be said to be reasonable under the circumstances and *de minimis* in nature.   Plaintiff has not articulated how the small hole is either excessive or unnecessary.   Accordingly, it is RECOMMENDED that the minor property damage caused during the arrest does not violate Plaintiff's Fourth Amendment rights, and Defendants are entitled to qualified immunity on Plaintiff's Section 1983 claim based upon this property damage.

#### iv.  *Search Warrant for the Property*

As to Plaintiff's claim that any Fourth Amendment violation occurred during the search of the Property, searches conducted pursuant to warrants do not violate the Fourth Amendment. Here, the arresting deputies paused as soon as Colton Carnett was arrested and the Property was secured to apply for a search warrant of the Property.   There is no dispute that the warrant was based upon the arresting deputies' observation of items in plain view that had been reported stolen from the Autry Lane break-in—namely, prescription bottles with the name of the Autry Lane resident, a box of cremated remains, and a black lock-box.

Plaintiff's briefing discusses countless alleged errors that he believes Defendants made throughout their investigation, including while searching the Property.   What Plaintiff does not clearly argue is why he contends that this search warrant was not valid or why he believes the Defendants who participated in the search could not reasonably rely upon it.   Accordingly, it is RECOMMENDED that the search of the Property pursuant to a search warrant did not violate the Fourth Amendment and that Defendants are entitled to qualified immunity on Plaintiff's Section 1983 claims based upon the alleged unlawful search.

#### v.  *Seizure and Retention of Plaintiff's Personal Property*

As to Plaintiff's claim that any Fourth Amendment violation occurred due to the seizure and/or retention of Plaintiff's own personal property, there is no evidence of what personal property Plaintiff contends was unlawfully seized or retained and why he believes it was unlawful. Accordingly, it is RECOMMENDED that Defendants are entitled to qualified immunity on Plaintiff's Section 1983 claims based upon seizure and retention of his personal property.

### vi. Excessive Force

To the extent that Plaintiff initially sought to pursue a Fourth Amendment claim for excessive force, he has since testified at his deposition that no excessive force occurred. Additionally, there is no other evidence that force was used against Plaintiff at any point. Accordingly, it is RECOMMENDED that Defendants are entitled to qualified immunity on Plaintiff's Section 1983 claims based upon excessive force.

## IV.    Conclusion

For the reasons set forth herein, it is recommended that Defendant's Motion for Summary Judgment is hereby GRANTED.

**SIGNED** this 22nd day of August, 2023.

s/ Charmiane G. Claxton
CHARMIANE G. CLAXTON
UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT.   28 U.S.C. § 636(b)(1)(C).   FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**