IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

|  |  |  |
|---|---|---|
| KEVIN CARNETT, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 20-cv-1238 |
| | ) | |
| BLAIR WEAVER, SETH PRESLAR, | ) | |
| CODY CLOUD, JASON WALKER, | ) | |
| KYLE CONNER, KYLE CUPPLES, | ) | |
| MARK GRIFFIN, and MICHAEL | ) | |
| PHELPS, in their individual | ) | |
| capacities, | | |
| | | |
|     Defendants. | | |

## ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS AND GRANTING SUMMARY JUDGMENT FOR DEFENDANTS

This is a 42 U.S.C. § 1983 case alleging violations of Plaintiff Kevin Carnett's Fourth Amendment rights. Before the Court is the Magistrate Judge's Report and Recommendations (the "Report"), issued on August 22, 2023. (ECF No. 90). The Report recommends granting Defendants' January 20, 2023 Motion for Summary Judgment under Fed. R. Civ P. 56(a).[1] (ECF No. 72). Plaintiff Kevin Carnett, who is proceeding *pro se*, filed his objections on September 6, 2023. (ECF No. 91); see Fed. R. Civ.

---

[1] Deputies Cody Cloud, Kyle Conner, Kyle Cupples, Michael Phelps, and Jason Walker; Chief Deputy Mark Griffin; Investigator Seth Preslar; and Sheriff Blair Weaver are referred to collectively as "Defendants."

P. 72(b)(2); 28 U.S.C. § 636(b)(1)(C).   The same day, Plaintiff filed a motion to amend the scheduling order and a second motion to amend his complaint.   (ECF Nos. 92, 93).   Defendants have filed responses opposing Plaintiff's objections and both motions.   (ECF Nos. 94-97).   Plaintiff filed a reply to Defendants' responses on September 27, 2023.   (ECF No. 98).

For the reasons discussed below, Plaintiff's objections are OVERRULED, and the Magistrate Judge's Report is ADOPTED. Plaintiff's motions to amend the complaint and the scheduling order are DENIED.   Defendants' Motion for Summary Judgment is GRANTED and Plaintiff's complaint is DISMISSED with prejudice.

## I.   Background

Plaintiff filed the instant complaint on October 20, 2020, alleging claims against Chester County, Tennessee; the Chester County Sheriff's Department; Sheriff Blair Weaver; Investigator Seth Preslar; Deputies Cody Cloud, Jason Walker, Kyle Conner, Kyle Cupples, and Michael Phelps; Chief Deputy Mark Griffin; District Attorney Jody Pickens; Magistrate Judge Larry McKenzie; Probation Officer Clint Murley; and Earl Benish.   (ECF No. 1). Plaintiff asserted four claims pursuant to 42 U.S.C. § 1983, arguing that Defendants had violated his Fourth, Fifth, Eighth, and Fourteenth Amendment rights.   (Id. at 18-21).   Plaintiff also asserted that Defendants were liable for negligence, false imprisonment, negligent infliction of emotional distress,

invasion of privacy, and unlawful search and seizure under Tennessee law. (Id. at 22-25).

On June 16, June 17, and July 2, 2020, United States Magistrate Judge Charmiane G. Claxton issued three separate reports, recommending the dismissal of all claims against Magistrate Judge McKenzie, District Attorney Pickens, Murley, Chester County, and the Chester County Sheriff's Department.[2] (ECF Nos. 37, 38, 41). She also recommended dismissing all of Plaintiff's state law claims and his claims under the Fifth, Eighth, and Fourteenth Amendments. (Id.). The Court adopted the Magistrate Judge's reports over Plaintiff's objections, dismissing all claims and except the Fourth Amendment claims against Defendants Weaver, Preslar, Cloud, Walker, Conner, Cupples, Griffin, and Phelps. (ECF Nos. 39, 42, 44).

After discovery, the remaining Defendants moved for summary judgment on January 20, 2023. (ECF No. 72). Plaintiff filed his response on February 13, 2023. (ECF No. 81). He continued to file supplementary exhibits, sending three USB drives of exhibits to the Court. (ECF Nos. 75, 76, 79-81, 83, 89).

On August 22, 2023, the Magistrate Judge issued her Report recommending granting Defendants' motion for summary judgment.

---

[2] On November 18, 2020, Plaintiff filed a notice that he was unable to locate Benish to execute the summons. (ECF No. 15.) Plaintiff voluntarily dismissed Benish as a defendant the same day. (ECF No. 17.)

(ECF No. 90).  The following is a summary of the Magistrate's factual findings, as relevant to this order.

On October 20, 2019, Deputy Phelps with the Chester County Sheriff's Office began an investigation into a break-in and possible theft at a residence located at 195 Autry Lane. (Id. at 4). Deputy Phelps discovered that the front door of the residence had been forced open and damaged.  (Id.)  An eyewitness to the break-in provided a detailed description of the suspect and his vehicle. (Id.). The vehicle was registered to Sherry and Kevin Carnett, and Investigator Preslar knew that Colton Carnett, the Carnetts' son, also drove the vehicle. (Dec. of Preslar ¶ 5). During a photo lineup, the witness to the Autry Lane break-in identified the suspect as Colton Carnett. (ECF No. 90 at 4).

On October 21, 2019, Investigator Preslar discovered that Colton Carnett had an active arrest warrant ("the Arrest Warrant"), on which his address was listed as 3590 Garland Road in Chester County ("the Property"). (Id.). Investigator Preslar confirmed that this was Colton Carnett's residence using state and local law enforcement databases. (Id. at 4-5). Investigator Preslar and Chief Deputy Griffin traveled to the Property to serve the Arrest Warrant. (Id. at 5).

On their arrival, Investigator Preslar observed the vehicle that he knew Colton Carnett drove. (Id.). When Investigator Preslar approached the front door, the door closed, and he heard

movement inside the residence. (Id.). Shortly after, Deputies Cloud, Walker, and Watkins arrived to assist, and they knocked on a door to the Property to announce their presence. (Id.). As the deputies entered the residence, they observed in plain view numerous "marijuana roaches" and prescription bottles that were prescribed to "Denise Whitaker" and "Denise Jackson" with an address in McNairy County. (Id. at 5-6). The bottles were near a black metal lock box. (Id.). The officers also observed a black container with cremated human remains and a label from a funeral home. (Id. at 6). Investigator Preslar stated that the residence was a "mess." (Id.). Plaintiff later explained that he was renovating the house. (Id.). Investigator Preslar contacted the McNairy County Sheriff's Office and was advised that Denise Whitaker/Jackson was the victim of an aggravated burglary reported on October 20, 2019. (Id.). Investigator Preslar was told that the suspect had stolen prescription medications, the cremated remains of Whitaker/Jackson's father, jewelry, money, a black lock box containing personal information, and other personal property. (Id.).

The officers did not find Colton Carnett, but Deputy Cloud concluded that Carnett was likely to be the attic because of a footprint on top of a computer tower under the attic access door. (Id.). Deputies again announced their presence and instructed the suspect to come out of the attic. (Id.). For officer safety

and in an attempt to obtain a view of the attic, Deputy Cloud picked up a nearby metal bar and attempted to lift the attic door. (Id.). The door would not open, and Deputy Cloud could feel pressure against the door that felt as if someone were actively pushing against it from the other side. (Id.). Deputy Cloud used a nearby metal bar to create a small hole, about the size of a tennis ball, in the sheetrock of the ceiling to obtain a view of the attic. (Id.). Colton Carnett was found inside the attic, and he was arrested. (Id. at 6-7).

Investigator Preslar determined that a search warrant was necessary based upon the stolen property and narcotics in plain view. (Id. at 7). While Investigator Preslar prepared and obtained the search warrant, Deputies Watkins and Cloud remained on the Property to secure it. (Id.). To assist them, Deputy Conner came to the Property and Deputy Watkins returned to it. (Id.). No further search of the Property or seizure of any items was conducted until Investigator Preslar retuned with the search warrant. (Id.). Investigator Preslar presented the search warrant application and affidavit to Magistrate Judge McKenzie. (Id.). The application and affidavit stated there was probable cause to believe that Colton Carnett had committed the crimes of theft of property, possession of marijuana, possession of a drug without a prescription, and aggravated burglary. (Id.). Magistrate Judge McKenzie granted the search warrant (the "Search

Warrant") and directed that any evidence, including stolen property, prescription medications, foreign and domestic currency, cremated human remains, marijuana, and any other evidence pertaining to the crimes, be seized. (Id.).

While these events were occurring, Plaintiff was at his shop in Jackson, Tennessee. (Id.). Plaintiff's neighbor called and notified him that deputies were on the Property, which prompted Plaintiff to drive there. (Id. at 7-8). On his arrival, Plaintiff was informed by Deputy Cloud that Plaintiff was not allowed inside the Property and that a search warrant had been obtained and was "on the way." (Id. at 8). Plaintiff returned to his truck, which was parked in front of the house. (Id.). Investigator Preslar returned with the Search Warrant about twenty minutes later. (Id.).

On his arrival, Investigator Preslar showed Plaintiff a copy of the Search Warrant and informed Plaintiff that he was not permitted to be on the Property during the search. (Id.). Plaintiff testified that shortly afterward, Chief Deputy Griffin and Sheriff Weaver arrived, but Plaintiff had no interaction with Sheriff Weaver. (Id.). Chief Deputy Griffin informed Plaintiff that he would get a copy of the Search Warrant after the search. (Id.). Following Investigator Preslar's instructions, Plaintiff moved his truck from the Property and onto the property of his neighbor. (Id.). Investigator Preslar,

Deputy Walker, and Deputy Conner performed the search, and Chief Deputy Griffin and Sheriff Weaver went into the home. (Id.). Deputy Cloud stayed outside next to Sheriff Weaver's vehicle. (Id.). Deputies collected the contraband, stolen property, and other items believed to be potential evidence of Colton Carnett's criminal activity. (Id.).

While seated in the truck, Plaintiff testified that he could only see into the back bedroom of the house through the windows on the side of the house and could not see into any other rooms. (Id. at 9). Plaintiff testified that he could not see any of the officers in the room. (Id.). Within approximately an hour after Investigator Preslar had arrived with the Search Warrant, Investigator Preslar had left the Property with four black garbage bags. (Id.). Plaintiff could not see what was in the bags. (Id.). After the completion of the search, Plaintiff received a copy of the Search Warrant, and all deputies left the Property. (Id.). No physical force was used against Plaintiff at any point. (Id.).

The Report recommends dismissing Plaintiff's claims against Deputies Phelps and Cupples because it is undisputed that they were never present at the Property. (Id. at 12). The Report recommends denying Plaintiff's claims that his rights were violated during the execution of the Arrest Warrant because the officers had a reasonable belief that Colton Carnett resided at

8

the Property and he was present at the time of the search.  (Id. at 13).  Therefore, Defendants had the authority to enter the Property.  (Id. at 13).  The undisputed facts showed that Sheriff Weaver and Deputy Conner were not present when Colton Carnett was arrested.  (Id. at 12).

The Report recommends denying Plaintiff's claims that his property was damaged during the execution of the Arrest Warrant.  (Id. at 13).  The Report recommends finding that it was undisputed that Deputy Cloud made a small, tennis-ball-sized hole in the ceiling next to the attic door because he believed that an individual was hiding in the attic and holding the door closed.  (Id. at 14).  The Report concluded that such *de minimis* damage was neither excessive nor unnecessary, and thus did not constitute a Fourth Amendment injury.  (Id.).

The Report recommends denying Plaintiff's claims that his Fourth Amendment rights were violated during the search of the Property because searches conducted pursuant to warrants do not violate the Fourth Amendment.  (Id. at 15).  The Report recommends denying Plaintiff's claims that his personal property was unlawfully seized and retained because he produced no evidence about the personal property to which he was referring, or why he believed its seizure and retention was unlawful.  (Id.).  The Report recommends denying Plaintiff's excessive force

claim, because he testified at his deposition that "no excessive force occurred."[3] (Id. at 16).

Plaintiff objected to the Report on September 6, 2023. (ECF No. 91). Also on September 6, he moved to amend his complaint to reflect "new facts" uncovered in "Defendants' own court filings, declarations before the Court, and discovery responses." (ECF No. 93 at 1). Plaintiff also asserts his intention to "streamline" his case by focusing solely on his Fourth Amendment claims. (Id.). He alleges that the Magistrate Judge did not appropriately consider the evidence he submitted by USB drive. (Id.). Plaintiff seeks to integrate that evidence into his new complaint. (Id.). Plaintiff moves to amend the scheduling order to permit the filing of these untimely amendments. (ECF No. 92). The Defendants have filed responses opposing both motions and addressing Plaintiff's objections. (ECF Nos. 94-97).

## II.  Jurisdiction

Plaintiff brings his claims under 42 U.S.C. § 1983, alleging violations of his rights under the United States Constitution.

---

[3] As explained in further detail below, Plaintiff's deposition testimony was not specifically that "no excessive forced occurred." Rather, it was that no physical force occurred, but that the Defendants used excessive force in searching his Property. (ECF No. 72-11 at 22). He did not retract his excessive force claim, but conceded that he did not "know if [he] could use the term 'excessive force.'" Id.

The Court has jurisdiction over Plaintiff's federal law claims under 28 U.S.C. § 1331.

## III. Standard of Review

Congress enacted 28 U.S.C. § 636 to relieve the burden on the federal judiciary by permitting the assignment of district court duties to magistrate judges. See United States v. Curtis, 237 F.3d 598, 602 (6th Cir. 2001) (citing Gomez v. United States, 490 U.S. 858, 869-70 (1989)). For dispositive matters, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); see also 28 U.S.C. § 636(b)(1). After reviewing the evidence, the court is free to accept, reject, or modify the magistrate judge's proposed findings or recommendations. 28 U.S.C. § 636(b)(1).

The district court is not required to review -- under a *de novo* or any other standard -- "any issue that is not the subject of an objection." Thomas v. Arn, 474 U.S. 140, 150 (1985). The district court should adopt the findings and rulings of the magistrate judge to which no specific objection is filed. Id.; United States v. Walters, 638 F.2d 947, 950 (6th Cir. 1981).

## IV. Summary Judgment

Under Federal Rule of Civil Procedure 56, a court must grant a party's motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must show that the nonmoving party, having had sufficient opportunity for discovery, lacks evidence to support an essential element of his case. See Fed. R. Civ. P. 56(c)(1); Peeples v. City of Detroit, 891 F.3d 622, 630 (6th Cir. 2018).

When confronted with a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine dispute for trial. See Fed. R. Civ. P. 56(c). "A genuine dispute exists when the plaintiff presents significant probative evidence on which a reasonable jury could return a verdict for her." EEOC v. Ford Motor Co., 782 F.3d 753, 760 (6th Cir. 2015) (en banc) (quotation marks omitted). The nonmoving party must do more than simply "'show that there is some metaphysical doubt'" as to the material facts and cannot rely merely on his pleadings. Chappell v. City of Cleveland, 585 F.3d 901, 912 (6th Cir. 2009) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)).

Rather, a plaintiff must produce "specific facts" based on "discovery and disclosure materials on file, and any affidavits," showing that there is a genuine issue for trial. Id. (quoting Matsushita, 475 U.S. at 586-87). The nonmoving party must point to concrete evidence on which a reasonable juror could return a

verdict in her favor; a district court will not "wade through and search the entire record for some specific facts that might support the nonmoving party's claim." InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989); accord Parker v. Winwood, 938 F.3d 833, 839 (6th Cir. 2019); Fed. R. Civ. P. 56(c)(3). The court views the facts "in the light most favorable to the nonmoving party," to the extent that any inferences are supported by the record. Scott v. Harris, 550 U.S. 372, 380, 381 n.8 (2007).

Although summary judgment must be used carefully, it "is 'an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action' rather than a 'disfavored procedural shortcut.'" FDIC v. Jeff Miller Stables, 573 F.3d 289, 294 (6th Cir. 2009) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986)).

## V.   Analysis

Plaintiff's objections to the Report largely reiterate facts from his earlier pleadings, address factual issues that are not dispositive, or are unsupported by the record. For example, Plaintiff accuses District Attorney Pickens of malicious prosecution in violation of the Fifth and Fourteenth Amendments. (ECF No. 91 at 5-8). Plaintiff's arguments are not relevant to the resolution of Defendants' summary judgment

motion.  Plaintiff's Fifth and Fourteenth Amendment claims, as well as all claims against District Attorney Pickens, were dismissed more than two years ago, on August 12, 2021.  (ECF No. 44).

Addressing his Fourth Amendment claims, Plaintiff objects to the Magistrate Judge's conclusion that Deputy Phelps and Deputy Cupples were not present at the Property and that Sheriff Weaver and Deputy Conner were not present for the execution of the Arrest Warrant.  (ECF No. 91 at 11).  For the reasons described below, Plaintiff has failed to show a genuine dispute of material fact about whether any of the Defendants violated his Fourth Amendment rights.  Even if Deputy Phelps, Deputy Cupples, Sheriff Weaver, and Deputy Conner were present at the scene, summary judgment would be warranted on Plaintiff's § 1983 claims on the merits.  The Magistrate Judge did not err in dismissing Plaintiff's claims against these four Defendants.

**A. Entry of the Property Pursuant to Arrest Warrant**

The Report recommends dismissing Plaintiff's claim that his Fourth Amendment rights were violated when officers entered his house to execute the Arrest Warrant.  (ECF No. 90 at 12).  The Report explains that a valid Arrest Warrant carries with it the authority to enter the residence of the suspect to execute it, so long as police have a reasonable belief that the suspect resides at the place to be entered and that he is currently

present in the dwelling.  (Id.) (citing <u>Payton v. New York</u>, 445 U.S. 537 (1980)).

Plaintiff concedes that there was a valid Arrest Warrant for his son, based on his son's violation of the terms of his probation, and that Colton Carnett was at the Property hiding from police.[4]  (ECF No. 91 at 2).  Plaintiff argues, however, that the police lacked a reasonable suspicion to believe that Colton Carnett resided at the Property.  (Id.).  Plaintiff asserts that, when he arrived at 3590 Garland Road, he told the deputies that Colton Carnett did not live at the house.  (Id.).  Plaintiff's objections lack merit.  Even if Plaintiff told officers that Colton Carnett did not reside at the Property, that would not negate the fact that it was identified as Colton Carnett's address both on the Arrest Warrant and in state and local databases.  (ECF No. 72-4 at ¶ 8).  Plaintiff's assertion, in his objections, that officers never used those databases is purely speculative.  (ECF No. 91 at 11); <u>Chappell</u>, 585 F.3d at 912.

---

[4] Despite conceding that there was an Arrest Warrant for his son's arrest, Plaintiff notes that the Arrest Warrant referenced a "Dillon Cross." (ECF No. 91 at 11).  Plaintiff is correct that the last paragraph of the Warrant gives officers authority to arrest "the aforesaid Dillon Cross." (ECF No. 72-4 at 12).  However, the Warrant refers to Cross only once, and otherwise exclusively refers to Colton Carnett.  (Id. at 11-12).  The reference to Cross appears to be a typographical error, and the Arrest Warrant, on its face, authorizes the arrest of Colton Carnett.

Plaintiff also argues that law enforcement did not have a reasonable belief that Colton Carnett was at the Property at the time the Arrest Warrant was executed. (ECF No. 91 at 9-11). Plaintiff asserts that the presence of the vehicle was not enough to show that Colton Carnett was present because Colton Carnett did not have a driver's license and drove a vehicle similar to that of Devin Cox, who should have been the main suspect. (Id.). These allegations do not negate the fact that officers found a car linked to Colton Carnett parked in the driveway -- a car that an eyewitness had identified, along with Colton Carnett himself, at the scene of the burglary. (ECF No. 72-4 at ¶ 5). Under *de novo* review, Plaintiff's claims that Defendants violated his Fourth Amendment rights by entering his Property to execute the Arrest Warrant, lack merit.

**B. Search of the Property**

The Report recommends dismissing Plaintiff's claim that his Fourth Amendment rights were violated during the search of Plaintiff's Property because searches conducted pursuant to warrants do not violate the Fourth Amendment. (ECF No. 90 at 15). Plaintiff's response that the search began several hours before a warrant was obtained is not supported by the record. (ECF No. 91 at 9).

The Search Warrant attached to Investigator Preslar's declaration is not time or date-stamped. (ECF No. 72-4, Ex. E).

16

Plaintiff has submitted a screenshot of a page he alleges proves that the Search Warrant was drafted at 1:57 p.m. and signed at 2:20 p.m. (ECF No. 83-27). The screenshot is not a copy of the Search Warrant itself, but merely contains information about a Word Document entitled "SEARCH WARRANT" that was last modified at 1:57 p.m. on October 21, 2019. (Id.). Plaintiff has submitted no evidence demonstrating that Defendants produced the screenshot, that the information the screenshot contains refers to the Search Warrant, or that the time the document was last modified was the time Magistrate Judge McKenzie issued the Search Warrant. (Id.).

Even if Plaintiff were correct that Defendants searched his home for several hours before obtaining a warrant, he has produced no evidence to show that any earlier search was unconstitutional. Defendants assert that they entered Plaintiff's residence to arrest Colton Carnett. (ECF No. 72-4 at 3-4). They had authority to enter the Property to execute the Arrest Warrant. Shreve v. Jessamine Cty. Fiscal Court, 453 F.3d 681, 689 (6th Cir. 2006). Plaintiff's bare assertion that the officers exceeded the authority provided by the Arrest Warrant is insufficient to create a genuine dispute of material fact. Although Plaintiff repeatedly claims to have time-stamped photographs proving that Defendants conducted an extensive search of his home before the Search Warrant was produced, none

of the photographs he cites is time-stamped.  (ECF 83, Exs. F-L, R-S, X, HH-II, QQ-UU).

Plaintiff cites numerous alleged irregularities in the investigation and prosecution of his son's case, contending that the Search Warrant was obtained in bad faith based on false information.  For example, he criticizes the photo lineup shown the witness to the burglary, argues that the witness testimony did not conclusively link Colton Carnett to the burglary, and asserts that Cox committed the burglary.  (ECF No. 91 at 2-3, 6-7).

In Investigator Preslar's affidavit to establish probable cause for the Search Warrant, he swore that when officers searched the Property, they found prescription bottles and a box with cremated human remains in plain view.  (ECF No. 72-4 at 28).  Investigator Preslar noted that the bottles, as well as cremated human remains, were reported stolen in a recent aggravated burglary in McNairy County.  (Id.).  Probable cause for a search warrant is based on the totality of the circumstances.  United States v. Helton, 35 F.4th 511, 518 (6th Cir. 2022) (explaining that courts review search warrants for probable cause based on the totality of the circumstances, examining the "four corners" of the search warrant affidavit).  Given the distinctive evidence connecting Colton Carnett to the McNairy County burglary, there was probable cause

18

notwithstanding any alleged problems with the lineup or other aspects of the investigation. Plaintiff's arguments that his Fourth Amendment rights were violated during the search of his Property lack merit.

### C. Property Damage and Confiscation

Plaintiff does not object to the Magistrate Judge's conclusion that the small, tennis-ball-sized hole in the ceiling is a *de minimis* injury that does not support a Fourth Amendment violation. (ECF No. 90 at 13-14). Plaintiff asserts, rather, that the damage to his home was much more extensive, citing generally to the photographs he submitted during discovery. (ECF No. 91 at 12-13). None of those photographs -- many of which are blurry, poorly-lit, and difficult to see -- demonstrates the extensive damage Plaintiff alleges. (ECF No. 83). Although the residence appears messy, that is consistent with Plaintiff's deposition testimony that his home was undergoing significant renovations. (ECF No. 72-11 at 7-9). Plaintiff's objections are unsupported by the record.

The Magistrate Judge recommends dismissing Plaintiff's claim that his personal property was unlawfully seized because he failed to submit evidence specifically identifying the items seized or why he believed the seizure was unlawful. (ECF No. 90 at 15). In his deposition, Plaintiff testified about items that were seized from his home, including a cellphone, laptop,

19

miscellaneous "personal items," and a car that was parked on his Property. (ECF No. 84-2 at 2-3). He has not, however, explained why seizure of those items was outside the scope of the lawful Search Warrant, which specifically addressed the "residence, structures, vehicles, and property of 3590 Garland Road." (ECF 91 at 13; No. 72-4 at 28). Plaintiff has failed to show that his Fourth Amendment rights were violated based on the alleged damage and confiscation of his property.

**D. Excessive Force**

Plaintiff objects to the Report's recommendation that his excessive force claims be dismissed, asserting that he opposes the dismissal "until excessive force has been clearly defined in this case." (ECF No. 91 at 13-14). The standard for showing excessive force under the Fourth Amendment requires courts to balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests" to determine whether the amount of force was objectively unreasonable. Vanderhoef v. Dixon, 938 F.3d 271, 276 (6th Cir. 2019) (internal quotation marks omitted). The Fourth Amendment prohibition of excessive force protects against "physically abusive" conduct. Graham v. Conner, 490 U.S. 386, 392 (1989). Plaintiff testified during his deposition that the officers did not use physical force against him, but that "the way they treated the home was

20

excessive." (ECF No. 72-11 at 22). Plaintiff's allegations that officers cursed him, threatened to arrest him, and refused him entry into his home are far below the level of severity necessary to sustain an excessive-force claim. (ECF No. 91 at 13-14).

**E. Motions to Amend Complaint and Scheduling Order**

Amendment of pleadings is governed by Federal Rule of Civil Procedure 15. A party may amend its pleading once as a matter of right within twenty-one days of serving it or within twenty-one days of being served with a responsive pleading or with certain motions under Rule 12. Fed. R. Civ. P. 15(a). "In all other cases," a party may amend only with the opposing party's consent or leave of court. Id. "The court should freely give leave when justice so requires." Id.

The Sixth Circuit has upheld a district court's denial of a motion to amend where the plaintiff failed to articulate the "substance of the proposed amendment[s]." Roskam Baking Co., Inc. v. Lanham Machinery Co., Inc., 288 F.3d 895, 906-07 (6th Cir. 2002). A court may also deny leave to amend on the basis of "delay, bad faith, dilatory motive, or futility." Crestwood Farm Bloodstock v. Everest Stables, Inc., 751 F.3d 434, 444 (6th Cir. 2014). Although there must be significant prejudice to the defendant to deny leave to amend based only on delay, permitting amendment "after discovery is closed and summary judgment motions

are fully briefed imposes significant prejudice on defendants."
Church Joint Venture, L.P. v. Blasingame, 947 F.3d 925, 934 (6th
Cir. 2020).

Plaintiff has failed to articulate the "substance of [his]
proposed amendment[s]." Roskam, 288 F.3d at 906-07. Plaintiff's
vague assertion that he wants to amend his complaint to include
"newly discovered evidence," which he never describes, is
insufficient to support amendment. Id.; (ECF No. 93 at 2).
Although leave to amend should be granted freely when justice so
requires, Plaintiff has failed to explain why permitting him to
amend his complaint would be in the interest of justice. Fed.
R. Civ. P. 15(a). Plaintiff seeks leave to amend: (1) to
"streamline" his case by focusing on Fourth Amendment claims;
(2) to incorporate "newly discovered evidence" into his
complaint; and (3) because the Magistrate Judge failed to use
evidence he submitted to the Court on a series of USB drives.
(ECF No. 93 at 2). All of Plaintiff's non-Fourth Amendment
claims were dismissed by this Court on August 12, 2021. (ECF
No. 44). An amended complaint is not necessary to focus
proceedings. Plaintiff has not explained what "newly discovered"
evidence he has obtained, beyond what he has had access to since
discovery ended. Granting leave to amend at this stage, after
Plaintiff's delay and after the parties have completed discovery
and briefed summary judgment, would significantly prejudice

Defendants.  <u>Church</u>, 947 at 934.  Plaintiff's motions to amend are DENIED.

## VI.  Conclusion

Plaintiff's objections are OVERRULED and the Magistrate Judge's Report is ADOPTED.  Plaintiff's motions to amend the complaint and the scheduling order are DENIED.  Defendants' Motion for Summary Judgment is GRANTED, and Plaintiff's complaint is DISMISSED with prejudice.

So ordered this 28th day of September, 2023.


*/s/ Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE